Judge Underwood
delivered the Opinion of the Court.
An execution in favor of Morgan, was levied on sun-C^T slaves as the property of Benjamin and Thomas G . Davis, who, with Gordon and Morton, the replevin sureties, were the defendants.
On the day of sale, an arrangement took place, and the -r\- , , , 1 two Davises conveyed the slaves to Morgan, by an ab-so]ute bill of sale, for the consideration of one thousand "ine hundred dollars, which satisfied the whole of the *21 execution, and a part of the demands which Morgan had against them. Morgan received possession of the slaves, and exercised ownership, so far as to direct them to go after their clothes.
The slaves were seduced, probably, to take under the Davises, notwithstanding their bill of sale to Morgan. It is certain that they assumed the control of the slaves, and refused to deliver them unless Morgan would agree to release a large debt which they owed him, over and above the amount of the execution, and for wmch Gordonand Morton were sureties. --
Morgan, apprehending that the Davises and their sureties were insolvent, being advised, as it appears from the pro,of, that he would never be able to obtain any thing unless he secured the slaves, agreed to execute the release? provided they would deliver him the slaves. He therefore executed a release, and delivered it as an escrow to McGary, to have lull effect whenever the Davises surrendered the slaves to McGary for Morgan.
The slaves were delivered to McGary, who thereupon delivered the release.
McGary refused to surrender any of the slaves to. Morgan until he conveyed two of them to him, which was done.
Thus, after Morgan had obtained an absolute title in consideration of one thousand nine hundred dollars, he was induced to release a debt exceeding one thousand dollars, and to part with the title to-two of the slaves, in order to recover the possession of the rest.
Morgan filed his bill to be relieved from the effects of the release executed as aforesaid. He charges a swindling combination between the Davises and McGary, and admits that he yielded to it, as the best means of securing a part of his property, when the.whole was in jeopardy from the lawless conduct of those who were but little better than robbers. The court decreed a cancelment of the release, but reserved to Gordon and Morton, any equity which they might be entitled to as sureties, on account of the delay; or the ability of the Davises being lessened by the contracts made with them by. Morgan. This decree is the subject of revision in this court.
*22 We think it clear, that Morgan was entitled to all the slaves under his bill of sale. They were absolutely his. His release to the Davises,'and his bill of sale to McGary, were executed with no other object, and for no other consideration, than to regain possession of part of the slaves, — the whole being withheld from him in violation qf law.
The fraudulent combination and management between the Davises and McGary, aré likewisé manifest, but Morgan was not the ignorant victim of their fraud. He entered into the contracts with them, fully apprized of all the facts. And the question is,whether Morgan can make a successful application to the chancellor to rescind contracts not entered into by him with good faith, but with a secret intention to avoid them at the time they were made. That such was his design, we conclude, from the circumstance that he well knew all the facts and impositions prac-tised on him at the time he entered into the contracts.
The present controversy does not embrace the bill of sale executed to McGary. The release against the debt is alone the subject of decision.
In 1 Maddock, 299, it is said,cc A Release or discharge obtained by fraud or compulsion, may be set aside; ás where a scrivener ran away with <£2000, which he was entrusted to lend out, and after some time writes to the party that if he will take £500 of his money, and give him a discharge, he should have it, which he did, not knowing how to come by his money; yet afterwards the creditor was relieved in chancery for the rest, notwithstanding his own release.”
This in principle is an analagous case. The creditor gavefhe release with a full knowledge of all the facts, yet the fraud of the scrivener, by which the creditor was iriduced to yield to his demand of a release, with a view to secure a part of what he was entitled to, justified- the chancellor in vacating the release. In the case stated by Maddock, and in the present case, the releases were not executed by reason of duress or fear of death, mayhem or imprisonment. But a strong motive, growing out of the fraud of the parties to be benefited by the releases, *23 was presented; and by their fraud, the releases, as a consequence of the motive so created, followed.
If an insolvent thief takes my property, and under an agreement from me to convey him- half in consideration of his surrendering the balance, he makes the surrender, will the law require me to keep faith and perform t he agreement ? We think not. It is an agreement superin-duced by fraud, and therefore should.be relieved against.
In Jacob's Law Dic. Title, Duress, it is said, “ if a man makes a deed by duress done to him by taking of his cattle, though there be no duress to his person, yet this shall avoid the deed.”
The decree of the circuit court is affirmed, with costs.